```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,            ) Cr. # 18CR10061-GAO
                                     )
                 Plaintiff,          )
          v.                         )
                                     )
TAMEA CHAMBERS                       )
                 Defendant.          )
_____)
```

**SENTENCING MEMORANDUM OF DEFENDANT PURSUANT**
**TO F.R.Cr.P. RULE 32(d) and 18 U.S.C. § 3553(a)**

*As a profession, and as a people, we should know what happens after a prisoner is taken away. To be sure the prisoner has violated the social contract; to be sure he must be punished to vindicate the law, to acknowledge the suffering of the victim, and to deter future crimes. Still, the prisoner is a person; still, he or she is still a family of humankind.*

> Associate Justice Anthony Kennedy
> Supreme Court of the United States
> August 9, 2003 [1]

This memorandum is being submitted to assist this Honorable Court in its determination of the most appropriate sentence for Ms. TAMEA CHAMBERS. Ms. Chambers respectfully requests that the Court consider a one year and one day incarceration period, 3 years supervised release and $200.00 special assessment as a sentence that is "sufficient but not greater than necessary" to comply with the requirements of 18 U.S.C. §3553.

---

[1] Justice Kennedy also stated therein: "When it costs so much more to incarcerate a prisoner than to educate a child, we should take special care to insure that we are not incarcerating too many persons for too long.... Our resources are misspent, our punishments too severe, our sentences too long."

1

**Ms. CHAMBERS Background and circumstances**

Ms. Chambers stands convicted of committing two separate bank robberies in October 2017. The robberies were committed within 2 days of each other. In each instance Ms. Chambers passed a note demanding money from the teller. Ms. Chambers has accepted her responsibility as to each of the offenses. At the time of the offenses, Ms. CHAMBERS was involved in a relationship with Paul Landrum, a related defendant, docket # 17CR10396-DPW.[2]

On 05/08/2018 Ms. CHAMBERS plead guilty to a two-count indictment charging her under 18 U.S.C. §2113(a). Said charge carries a maximum of twenty years on each count.

**18 U.S.C. § 3553 SENTENCING FACTORS**

1. *The nature and circumstances of the offense*, 18 U.S.C. § 3553(a)(1).

There is little question that the instant offense is a serious federal offense that requires a sentence that reflects both appropriate punishment tailored to the offense conduct, deterrence and protection of society. The recommended sentence addresses all of those concerns.

---

[2] Mr. Landrum was sentenced on 8/16/2018, for several robberies, to 57 months of incarceration with 36 months of supervised release based on a Total Offense Level of 24 and a Criminal History of III. See, Docket 17CR10396, document # 40.

1B.   *The history and characteristics of the defendant.*

Ms. CHAMBERS, a graduate of Madison Park High School in Roxbury was born and raised in Massachusetts.  She went on to attend one semester at Bunker Hill Community College.  Ms. CHAMBERS left the college due to complications from her pregnancy.

Ms. CHAMBERS suffers from significant mental health issues. See, PSR ¶¶'s 79-81, 83-84; Aid in Sentencing (Ex. A), Relevant History, pg. 3, second full paragraph.[3]  In conjunction with those issues, Ms. CHAMBERS suffers from chronic substance abuse. PSR ¶¶'s 88-92.

Although she reportedly grew up in a caring and loving family, her life took a turn for the worst while in high school where she was bullied, physically assaulted and threatened with death. PSR ¶70; Aid in sentencing evaluation, pg. 1, last paragraph and pg. 2, first full paragraph.

Ms. CHAMBERS was 20 years old when she became pregnant with her daughter and married the biological father.  Due to the husband's mental health issues, and domestic violence against her, she separated from her husband and moved to Connecticut. See Aid in Sentencing pg. 2, second full paragraph,  PSR ¶72,

---

[3]https://www.nami.org/Learn-More/Public-Policy/Jailing-People-with-Mental-Illness; https://link.springer.com/article/10.1023/A:1013164814732;
Persons with mental health issues are more likely to encounter the police than to get medical help and they are more likely to be incarcerated than to receive help.

While in Connecticut she was introduced to the world of prostitution by a man she became involved with; a man that was nothing but a "pimp." PSR ¶82; Aid in sentencing, pg. 2, last paragraph.

Each of the above mentioned life impacting events are factors that have influenced Ms. CHAMBERS life and helped weave the fabric of her being.[4] Ms. CHAMBERS allowed herself to be influenced and be used by others to commit a crime that she otherwise would not have committed on her own. Aid in Sentencing pg. 4, second full paragraph; pg. 6, second full paragraph.

(2)(A) (B) (C). *The need for the sentence "to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant."*

As set forth above, Ms. CHAMBERS stands convicted of a felony that has serious consequences. Most importantly, is the loss of physical oversight and contact with her daughter who needs her. PSR ¶70. Ms. CHAMBERS looks forward to re-establishing

---

[4] http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.456.4216&rep=rep1&type=pdf "The authors compared several aspects of early sexual experience found in two earlier studies of prostitutes with results of research on ' 'normal' ' women. The prostitutes had in common many negative experiences not found or found less often in other populations of young women. These include incestuous and/or coerced sex, lack of parental guidance, intercourse at a young age, and few or no meaningful relationships with males. These women had discovered that sex could lead to a kind of status, even though that status is negatively labeled by the wider culture. In a society that values women on the basis of their sexuality, a woman who views herself as "debased" may see prostitution as a viable alternative-perhaps the only alternative".

healthy family connections and wants nothing more than to be able to help care for her teen-age daughter and to be an integral part of her life.

A sentence of incarceration to the recommended one year and one day provides punishment that reflects the seriousness of the offense in this case (two bank note cases within two days of each other).

2 (D) *"to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."*

Ms. CHAMBERS, as set forth in the PSR ¶98, has a high school education and some limited employment skills. Hopefully, she will be able to acquire gainful employment upon her release and during supervision with the assistance of Probation.

During her incarceration Ms. CHAMBERS has used her time wisely: she has worked as a cook, PSR ¶99 and is involved with group therapy; problem solving; self-awareness and mind and body connection, PSR ¶85.  In addition while incarcerated at Suffolk County House of Corrections, she completed an anger management program, Id.

Ms. CHAMBERS is vested in her well being as she looks forward to reunite with her daughter. According to the Bureau of Justice statistics from 2006, probation and "parole" result in only a 7% rate of return to incarceration for a federal offender on probation or parole.

http://www.ojp.usdoj.gov/bjs/pub/pdf/ppus06.pdf table 5.

Probation supervision through supervised release is also a more cost effective alternative to longer BOP incarceration. See http://www.nyfederalcriminalpractice.com/2008/05/government-estimates-costs-of.html.

A recent report from the U.S. Courts indicates that the cost of post sentence incarceration is $36,300 versus the post sentencing cost in the community is $4,36[0].



4). *The applicable category of offense under the Advisory Guidelines*.

Ms. CHAMBERS submits that Probation properly calculated her Total Offense level at 21 with a criminal history category of II.

The Court may also wish to consider that Ms. CHAMBERS served state time for the instant matter as she was held in state custody prior to her transfer to this Federal jurisdiction. PSR ¶1.

(6). *The need to avoid unwarranted sentence disparities with similar records who have been found guilty of similar conduct*.

This Honorable Court, is best able to assess how the Court, and other courts, have treated similar offenders with similar records given the Court's increased discretion after *Booker, Gall and Kimbrough*. However, this Honorable Court should consider that Mr. Laundrum enticed Ms. CHAMBERS to commit the instant offenses, See Aid in Sentencing pg. 6, 2nd full paragraph:

> "When asked to explain more specifically her reasons for committing the robberies, she indicated that her boyfriend "always needed more [heroin] all the time… it was never enough." Ms. Chambers reported that she "didn't want to do it" but felt like she was "between a rock and a hard place." She noted that her boyfriend was "dope sick" during that period of time and pressured her to commit the robberies by emphasizing all that he had done for her, making her feel guilty. When asked, Ms. Chambers acknowledged that she loved him. She denied that he was physically abusive or threatening toward her, noting that he was the only romantic partner, besides her husband, who did not physically harm her".

Mr. Landrum, a related defendant, with a more severe criminal history and with several many more bank robberies which were the basis of his federal conviction, was sentenced to 57 months with three years of supervised release.

## SENTENCING RECOMMENDATION

WHEREFORE, TAMEA CHAMBERS, respectfully requests this Honorable Court to sentence her to one year and one day *with three years of supervised release.* She further requests that the Court find that she has no ability to pay a fine.

Date: September 10, 2018          Respectfully submitted,

BOURBEAU & BONILLA, LLP

*S/ Victoria M. Bonilla*
Victoria M. Bonilla-Argudo
BBO# 558750
236 Commercial St., Unit One
Boston, MA 02109
(617) 350 6868
Attorney for Defendant

**Certificate of Service**
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.
S/ Victoria M. Bonilla